May it please the court. Michael C. Walters, Assistant Attorney General on behalf of Appellants Allie Raichin, Graziani, Benjamin Rehig, Susan Hacker, Rebecca LaBaer, and Krista Dupre. Is there anything out of the fours or counts four and five of the complaint? I'm sorry? Is there anything out of the fours or the relief, sorry, in counts four and five of the complaint? Four and five, those, they are the defendants, yeah. And do you wish to reserve time for rebuttal? Yes, I would like to request permission for three minutes of rebuttal time. The appellants here confronted one of the more difficult decisions that a public official does confront, and that is whether to remove an 18-month-old baby from her mother who is violating a supervised contact restriction. We know that, but help me understand this. If we take what's alleged in the claim as true, and it's totally safe, you've got to do that, how do you get past the fact that there are disputed issues of value? They're basically alleging, I don't think that anyone here, and probably your opponent, would not disagree with what you're doing in your opening presentation to us, that your client's having a god-awful difficult job. If they err on the side of leaving the kid there and the kid dies, my gosh, the ramifications of that, and you've got a dead human being on your hands. If you move too quickly, you've got a situation like we do here. So it's a very, very difficult job. It's exactly the kind of tenuous situation, difficult situation, that the doctrine of qualified immunity was designed for. But they're alleging it's all bad faith, that the reasons that you're saying that you removed the kid or your client's removed the kid are not the reasons at all that you removed the kid out of bad faith and vindictiveness, and that you relied upon hearsay evidence, drug tests, which now I have to ask about that because you're saying there was evidence of drug abuse that went into the decision, they're alleging that that wasn't involved in the decision at all and the drug tests came up negative. They say it wasn't really negative, it's just that later on they found out that the threshold was below that which would suggest positive. To me that's negative. But why isn't all that a question of fact? Well, I think it's important to categorize. It's two things. The first thing I would start with is that with respect to the qualified immunity decision, it is an objective analysis as opposed to the subjective intent of the caseworkers does not factor into the qualified immunity analysis. The second part would be... You're saying if the caseworkers pursued this case not out of the best interest of the child but out of vindictiveness and bad faith that it's irrelevant to qualified immunity? No, it would be looking at whether there was objective evidence before them and whether a reasonable... Why wouldn't they be looking at whether or not they relied upon objective evidence and whether or not they used the objective evidence that was there in a way to pursue the bad faith claims and the process mentioned, as he alleges, that you can't prove us we're immune? I guess what I'm trying to get at is what the intent or the basis of these particular caseworkers, that would be their subjective intent. That is not what goes into the qualified immunity analysis. Harlow explains it's an objective test. Now, I think there's two different categories for the evidence. Because what you have here is the... What is that objective evidence here? Well, here the objective evidence would be... You start with the triggering event was the violation of the supervised contact restriction. But I think you have to look at the totality of the circumstances. Does she dispute that? She does not dispute that she left the safe house. What she alleges in the complaint is that she had advised appellants that she was going to have to leave and that appellants failed to make other arrangements. And is that the only objective reason that the caseworkers had for taking the child into custody? The background information would be that the supervised contact restriction was implemented after she had failed two tests or tested positive. For marijuana or cocaine or both? For marijuana. The test for cocaine happened after the removal. So for purposes of this issue, it's irrelevant because that happened... And she's alleging that the marijuana was used when the kid was not in her custody and the, quote, self-medication, close quote, to deal with the trauma of the domestic abuse. Yes, that is her allegation. Let me back up and see if I can understand something. When do you train caseworkers to believe that there is a reasonable suspicion of abuse of a child? We're talking about the mother and her child. The mother had traces of marijuana in her system when she was tested, but how does that convey a reasonable suspicion of child abuse? The positive test for marijuana did not trigger the removal. That is the background information. That is one of the bases for implementing the supervised restriction. So what's the process you go by? What aids you in determining that these certain things have been checked off and therefore we believe we have to go forward and extract this child from the custody of the mother? Here would be the violation where you have the supervised contact restriction would not be implemented unless there were concerns with the mother. I mean, there is a push and pull between the process. The agency wants to allow for as much interaction and custody for the parent. So here where you have the positive test, they did not seek to remove at that time. Instead, what they did was they sought to have custody and supervision while physical custody and legal custody remains with the mother. You're not suggesting that every time there's a positive marijuana test, you request revised visitation. Every parent, every other parent in every state in this country would be under supervised restriction if that's the test. No, it's one of the bases that go into the situation. Here, the case workers came into the situation. There was a domestic violence incident. That dealt with the father. I'm trying to find out what was the reasonable suspicion of the mother that caused them to say, this is one, we've got to act. The violation of the supervised contact restriction. That's what triggered it. And then you have a situation. Is that discretionary or mandatory? That is discretionary. You have a case worker who then needs to make a decision whether they are going to remove the child or they are going to allow for the violation of the supervised contact restriction to continue. Here, the removal occurred. It occurred on Friday. There's a requirement for a court hearing within two court days. And so they need to make that decision. So here, that is the triggering event. That's what tipped the scales. But I think it's also important to keep in mind that there are other factors that go into this. What I don't understand is how the scale is tipped so significantly. So the person violated a supervised release or a supervised restriction. Does that mean the child is in imminent danger of being abused by the mother? Abuse or neglect. So in that situation, it would be imminent harm of here, the background evidence. Was there any indication that the children or the child had been abused? There was no physical evidence of abuse. The question is, is there any evidence of abuse? And you responded by saying no evidence of physical abuse. But I think the question was broader than that. There is no evidence. I would agree that there is no evidence of abuse. What you have was a concern of imminent risk because you had a ‑‑ first you had an allegation from a family member that the mother was using drugs or under the influence of drugs at the time of the parents of the child. That allegation was in the context of a very hotly, I would assume it's very hotly, always are disputed domestic relations context, though, didn't it? That allegation was made by the brother‑in‑law who was the same brother‑in‑law who she had allowed the evening or the day of the incident, that evening she had given the child to or allowed the brother‑in‑law to take care of the child. That is the undisputed time when she smoked marijuana. At that point, when you have the domestic violence incident, the agency is going to come in and begin to conduct the investigation. They're going to interview various family members. At that point, there was an allegation from that brother‑in‑law that she was under the influence while caring for the child. But she was tested four times after that, and they were arguing about positive. She was tested after that. She tested positive twice. I think there were four negative tests. And then after the removal, there is the hair follicle test. Which was inconclusive or negative or positive? It was inconclusive. So what it is is it was 500 for the cocaine, it was 500 picograms. And to be positive, it needs to be more than 500 picograms. So why isn't that negative? Because you're saying there's some suggestion of the presence of the cocaine. It would be negative, but I think my point is that that negative test occurred after the removal. So it wasn't part of... When I read the brief, I saw a positive test. I had a very certain mindset. Then I read the brief and saw it wasn't a positive test at all. It was inconclusive. And now you're saying it was negative. I'm sorry. The two positive tests were absolutely positive for the marijuana. The hair follicle. The hair follicle? For the cocaine. That was negative. No, we're not. We're saying what our basis is. There were two positive tests for marijuana. Counsel, neither Taylor v. Barkis nor San Francisco v. Sheehan had been decided at the time the district court evaluated this case. In your view, would it be more prudent for us to remand it for reconsideration in light of that intervening Supreme Court precedent? Or in your view, is it more prudent just to decide the case? I think it would be more prudent to decide the case, but I think remand is an option, an option I did not think of. But you're right, it wasn't there. And I think that particularly Sheehan seems to at least have a chance. Have you had a chance to read those two cases? Yes. And in your view, how would they inform the presentation? Would it result in a different presentation of the district court, those two cases? Yes, I think it does in the sense that Sheehan brings the issue, and that's looking at the reasonable objectiveness in the context of unlawful entry, but says that it was not clearly established at that time that under the information known by the officers that there was not an immediate need. So putting that to the issue here is it's not clearly established to these case workers that the information that was known to them did not establish reasonable suspicion. Did you write the brief here? I was involved in writing the brief, yes. I'm sure you were involved in it. Did you write it? Actually, did you sign off on it? No, no, no, I reviewed, made edits. Okay, unless I'm mistaken, I think you just said that the hair follicle test was negative for cocaine. Did I mishear that? Because it's early in the lettering so well. The hair follicle test, right, so it was negative for cocaine. What happened was it was reported to the state. No, no, I don't like the background. I was trying to get to an answer to the question. It was negative. It was negative for cocaine. It was negative for cocaine. Okay, and maybe it's inartful drafting, but on page five of your brief on November 21, an appellee submitted it to a hair follicle test, which was positive for cocaine and marijuana. Am I having a problem with this language here, or is that just a blatant misstatement of fact? Okay, I would agree that it's inartful. Inartful, damn, inartful. Was it positive or was it negative? It was negative. In bad faith, did you come into briefs with those kinds of misrepresentations? Was it positive or was it negative, or was it inconclusive? I guess it would be inconclusive if I could just explain it. No, it was inconclusive. If I could just explain. Cast out the bag and now it's inconclusive. This is like Schrodinger's cat, it's both alive and dead at the same time. No, I think if I could just explain the confusion as far as why one could say that it's positive in the sense that it was positive for 500 micrograms. Well, that's why I asked you if it was positive or negative, and you said negative, and then we got into what you said in the brief, and then it became inconclusive. Before we started that inquiry, it specifically gave you the opportunity to say it was inconclusive, and you said, no, it was negative. Now, you could argue that if it's inconclusive, technically that's a negative finding, but that's not what you said. Well, I apologize. I certainly don't mean to misrepresent it. Of course. I guess what I'm trying to say is it came back as positive for 500 micrograms of cocaine. However, the testing company said that that was positive. As it turns out, the threshold to be a positive test would be 501 micrograms or more. So now there's a plus or minus 20% error margin, so I guess the more appropriate answer would be it's inconclusive. But those are the facts sort of surrounding that. So to the extent that it's saying it's positive for cocaine, it's positive for 500 micrograms of cocaine. All right. Well, now we're talking about it. Go ahead. Go ahead. So for these caseworkers, they need to make, you know, they're confronted with this decision whether to remove or whether to allow for the continuing violation. Now, I just kind of want to circle back to perhaps the original questioning, which was assuming the allegations are true, I think, you know, at worst the allegations here that they failed to make arrangements would arise, that's negligence. Well, they're alleging that they tried to get, they brought to your attention the fact that the supervised situation was not working out, that the people involved here refused to find alternative housing, so then she took it upon herself to find her own alternative housing. I assume she would argue for the sake of herself and the kid. And that alternative housing was housing that later on, I think you said five days later, the department approved. So it wasn't that she moved from the one situation into an unapproved situation, a totally deplorable situation or a crack house. Where they ended up going was housing that was approved a few days later by the agency. But you're saying the fact that they left the housing which you would not give them a response to has gone through removing the kid from the family. That's what you're arguing. Correct. Correct. And to the extent that, so in their brief, they argue that the caseworker is purposely delayed. That's not found in the complaint anywhere, that they purposely delayed. The complaint says that they failed to make arrangements. And assuming that is true, that amounts to negligence. And the negligence does not arise to a constitutional violation. In Zaccardi, this court had said, at least in this context, it would have to be more than deliberate indifference, and that allegation does not arise to that. So I think to circle back to how that fits into the analysis is that it would not be clearly established to these caseworkers, at least that even assuming that their negligence caused a Pelley to have to leave or violate the restriction, they would still be entitled to qualified immunity. Thank you. Okay, Mr. Rosado and Ms. Laney? Yes, Your Honor.  Members, may it please the Court, Kenneth Rosalene, attorney-at-law on behalf of the Pelley, Ms. Michelle Mamaro. Let me just ask you at the outset, has the Supreme Court ever held that caseworkers investigating child abuse violated the substantive due process rights of a parent? Not in this context, Your Honor. The extent due process rights have been addressed by the U.S. Supreme Court has been in the context of termination of parental rights proceedings, in which they may have applied the wrong standard of evidence, or there was issues of due process as the failure to have a hearing, but no case law, unfortunately, from the U.S. Supreme Court on the issue that's before this Court, which is the assessment of due process rights. So doesn't that, under Supreme Court precedent, a title mean that there's not clearly established law in this area, and therefore qualified immunity needs to be addressed now? Clearly established robust law has been in existence since the Croft decision, which has been extensively briefed in this case. You mean the Sixth Circuit case? I'm sorry? The Sixth Circuit case. No, the Croft, the Third Circuit case, and the Croft. There's also a... Okay. What were the facts in Croft? Does Croft feed Westmoreland County? Yes, Your Honor. What were the facts in that case? The facts in that case were an allegation of sexual abuse, in which there was a hearsay allegation and there was some investigation, and in that case the caseworker had given testimony that they really didn't believe one way or the other. They couldn't make a determination whether or not abuse or neglect had actually occurred in that case. That's a case where there's an allegation of actual abuse, as opposed to this case where there's actually no allegation at any time that my client had ever abused or neglected her child. And there was a factual dispute about whether there was actual abuse in Croft, right? Yes, there was. And there was bad information given about that, right? Yes, Your Honor. Is it your challenge here that your client, there are some facts in dispute certainly, but is it the challenge that you have here that your client has admitted to at least one violation of the order? Well, the issue that I think the most important focus should be on the issue of was there a situation where there was substantive evidence of imminent abuse or neglect? Didn't your opposing counsel note, look, at best there's a negligence issue. They found or they determined that there was reasonable suspicion of abuse when, in fact, maybe they didn't have all of the facts and maybe they jumped to some conclusions. But you've got a case here that goes way beyond this case. The consequences of this case were we to rule in your favor on these facts means that the next time a caseworker goes in or the next times, plural, they're going to say, wait a minute, we better not do something. We better hold off. We better hold off. We better just back off. And then something happens where a child ends up in a hospital brain dead. Well, Your Honor, that's not the situation. There was no – I'm not talking about this case. I'm talking about the next time for somebody else, the next case. Well, the standard here is still the same. We're not arguing for new law, but the law that's been in place since Croft. If there's no clearly established law and no robust consensus of any of the circuits on this, Croft doesn't help you here. Croft just says we have held that a state has no interest in protecting children from their parents unless there's some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse. They may have made the wrong calculation here, but that doesn't rise to the level of a substantive due process violation of the Constitution. Where in your complaint do you allege something other than negligence? Well, we're not alleging negligence. I think the court has to understand what's going on in the family courts and the juries. Well, it's probably six. Where in your complaint are you alleging something that is more than negligence, which would clearly not get you past qualified immunity? Well, it's not negligence because... Where in your complaint are you alleging something more than negligence? Well, throughout the complaint I'm alleging that the case workers knew that, first of all, they knew that Ms. Mamaro's time was going to expire. And Ms. Mamaro had, at the shelter that she was in, that she had communicated to the case workers. So you're alleging bad faith? Well, I'm alleging bad faith. I just did a search. According to the search I just did, the phrase bad faith does not come up anywhere in the appendix which would include your complaint. Or is something akin to it, or deliberate indifference, or... Shocks to conscience. Shocks to conscience. Anything like that. Well, the allegations amount to a shock in the conscience because of the bad faith that was exercised by the case workers in which the district court found. We have a situation where the case workers are trying to pressure my client into giving up her child or placing her child in the foster care. When my client decided to get a restraining order against the husband, case workers are pressuring her to drop that baby. They may have overreacted, but how do you write a decision to make sure in the next case that the case workers do not underreact? Well, there's an issue of eminence here. The case workers already had information in their possession of my client that already provided them the house that she was moving to. So this is the house I'm providing as an alternative. When I went before court, it was approved. They had all the information in their possession to approve the house, and it was approved. So they had all the information in their possession objectively that they knew that they needed to get an extension for the shelter if they wanted my client to continue to stay in the shelters. The issue of eminence is important because the case workers, knowing this for a long period of time, failed to make an application for any court order to either extend the shelter or to make an application for removal through a court receipt. Again, let's assume you're right on all of that. How is that a violation of substantive due process of the Constitution? Because there was no objective evidence that there was eminent abuse or neglect in this case. And that gets you to negligence. That doesn't get you past negligence? You're arguing facts. That's not negligence. Well, that's the objective standard that we're applying that would qualify immunity in Harlow. When we're arguing a violation of a 1983 violation, we have to go beyond just objective violation,  What is your best case to support a substantive due process violation? I think we have to go to we start with Croft. You're saying Croft is the clearly established law because there's no Supreme Court law that's clearly established. That's correct. All right. But one of the things the circuit courts of appeals have wrestled with and the Supreme Court has criticized the circuit courts for doing is defining the constitutional right at too high a level of generality. Why isn't that precisely what the district court did here? And how would you define the right at issue? I think the right is defined in Croft. I think the issue here is All right. What is it? Give us the definition of the right at issue. The right at issue is, as Your Honor has stated, that the state has no interest in investigating parents for abuse and neglect unless there's substantive evidence of imminent abuse or neglect. And there wasn't any. The state has no interest in investigating abuse or neglect? Well, even investigating, when investigating, say when a child abuse investigation has started, they're going to go to the parents. Yeah, usually it's not an investigation. Usually it's an investigation. Well, beyond that in this case. You concede the state had a right to investigate, Ms. Vermeil, right? I mean, there was domestic violence in the house. If that doesn't trigger an investigation, what would? Well, they have a right to do an investigation. I wouldn't say they have a right. There's authority to do an investigation. In this case, right? Yes, but Ms. Vermeil does not have to. This is one of the issues. They say, well, this is quasi-criminal law. Ms. Vermeil doesn't have to let them into her home. She doesn't have to answer their questions. Are you challenging the validity of the order that she was laboring under? I thought you were challenging what happened after the order. I'm not challenging the validity of the order. All right. So then the right, I'm trying to press you because we need to define this right very specifically. And if you concede that the order was validly entered, how do we define the right? What right did Ms. Vermeil have? What constitutional right did she have that was violated by these state actors? Well, Ms. Vermeil was in compliance with the court order. So the case workers were acting outside of the court order, were acting without the protection of a court order or court proceeding. Ms. Mammaro was, according to the court order, was providing care for a child in a supervised situation. You just told us what she was doing. But, again, I'm asking you, and I hate to be persnickety about this, but this is what the Supreme Court has required of us as I see it. We need to define the right at issue. What constitutional right did Ms. Mammaro have in this case that was violated by these state actors? Well, the right to be free from interference with their family integrity, where the state would come in and remove her child, where there's no evidence of abuse or neglect. Where you just said there's no evidence of abuse and neglect. Yes. You're pushing the bar beyond the facts of this case. And, again, it turns into what you have alleged, and I'm still trying to wrestle with, why, in the face of the complaint, you get past the kinds of concerns that we're questioning about. Why it isn't negligence. They acted, perhaps, hastily, which gets you to Judge Ambrose's concerns about what happens next time. And the right does seem to me to the substantive, familiar right to not have your children's, or your custodial rights to your children, interfered with. That's the nature of the right. Yes, Your Honor. It's not the investigation here at all. They had an obligation to investigate, given what they'd heard. I think you'd agree with that. There's authority for them to do an investigation, my client, within my client's rights, and within the rights of parents. But they removed the child with that. They had an opportunity to go to the court and make an application for a court order if they wanted to remove the child. Well, then, if it's that they acted too quickly, that's a very different picture than, I think, interfering with the custodial right to a child. Because if you delay in waiting, you're into the, I'll call it the Ambrose scenario. They go through the process they have to to get a court order, and it looks like New Jersey does not have any kind of, I could be wrong, emergency proceeding. Because if I was a state court judge, I'd be here for a month, so I'd be on duty, and I'd get calls at 3 in the morning where somebody would verbally present to me what they believe was going on, and they'd get an order over the phone to remove the child from the house. New Jersey doesn't have that? New Jersey does have that. Once that's the issue, instead of making that kind of application or emergent application, they made the decision to remove the child and then have my client be subject now to proceeding. They have to go into court afterwards, several days later, to now go and get her child back. And it's an extreme deprivation of my client's civil rights. Her child has been removed.  This is an issue of knowledge in the complaint, but there's other facts that should be brought out in discovery. There was a great deprivation of my client's liberty. The division and the case workers had no authority to come in and take this child. There was no objective evidence of abuse or neglect, and they had information in their possession that the housing situation my client had gone to was appropriate. So the only thing you can really rely on is, principally, is Croft. There's no Supreme Court case. So what does Croft say that says that there is a clearly established right of substantive due process in circumstances like these? Well, the state has no interest unless there is objective evidence of abuse or neglect to interfere with the integrity of the family and remove the child. There's also, while in a particular case, the Miller case, there's been many cases that have approved the substantive language, although- Was there an order of supervision in Croft? There was no order of supervision. It was prior to- That's a pretty important distinction from this case, right? Well, in this case- Because here we have a valid order of supervision. Well, how about order of supervision when my client was complying with the order? So the case workers knew that my client was not going to be able to stay at this facility. We're giving the case workers too much credit here. So they're not- The bad faith component is to understand what's really going on, which is that they were pressuring my client into giving up her child. This was essentially like an entrapment. They were trying to have a pretext to remove the child. And the only remedy- None of that appears in the complaint. Well- I mean that now, but it's a 12B6 review. None of that appears in the complaint. It's spelled out in the brief, but that's not the test. I've alleged the facts that support that. I'm alleging the factual basis in the complaint, and now I'm putting the facts together and- It almost sounds like a conspiracy case. You might be able to weave together facts that would say that these state actors conspired to try to deprive my client of her right to raise a child. Well, it's conspiracy. Yes, Your Honor. But you've got to file that complaint. I mean that's not the one in front of us, right? Well, there's a conspiracy allegation, and there's also an allegation that we want to reform the division to make sure that this doesn't happen in the future, that parents are given proper notice that they're read their rights, that there's an issue of a supervised custody, that the communication is done correctly, and that the division does not remove children under these circumstances. The state here in New Jersey is asserting that they can't remove children without allegations of abuse or neglect under Title 30, and I think that's what the court's going to understand. This is not simply a situation where the state is saying, well, we made a mistake, maybe we acted too quickly. The state of New Jersey is actively disregarding the substantive right. They're trying to intervene and interfere with cases involving parental rights in ways that they should not and they're not allowed to constitutionally. That's why they're arguing that there should be no damage because in the Second Circuit there's a determination that, well, even if there is a removal and it's determined to be objectively unreasonable, a few days' removal is not a harm that rises to a constitutional violation. Well, it is, absolutely, and the only remedy for that is a 1983 action to hold the case as responsible. You use the term conspiracy in terms of the police conspiring with the social service people to remove the child. Yes, sir. Arguably that's the kind of conspiracy, the nefarious kind of conspiracy that you're talking about. Arguably it's simply that it doesn't get past the objective good faith belief that the child may be, not necessarily is, but may be in sufficient danger to remove the child, and they enter it into a, quote, conspiracy with the police to get the kid to a safer place. That does not get to the kind of bad faith, sharps the conscience allegation that you need to cite to date, which is helpful. That is a nefarious kind of conspiracy, but that's a footnote, and it's not really the kind of conspiracy that you're alleging, that you're arguing, that you lay out in the brief. Well, I think we have to look at the objective evidence that was before, and how the state is presenting their case in their brief. The minor amount of marijuana that was smoked was not in a child carrying role. It was months before the situation. When they arrived at the scene, my client is not on marijuana. She's already tested negative for months. But the cousin-in-law is saying that the kid's in danger. Well, that's months before, and that's an allegation that ultimately was proved to be incorrect. But there was no evidence at the time that they arrived at this house. The child was, there was no abuse. The child was well cared for. The supervision was proper. My client did not appear to be on drugs. Again, assuming you're right on everything, we're not repeating ourselves, but where is there a clearly established legal right that was of substance to due process that was violated here? I think that the other thing, if you're relying on Croft or Miller, which talks about investigations, it has to shock the conscience even in Miller. Yes. It's hard for me to believe here this is anything more than possibly negligence. They overreacted. These caseworkers are acting with intent. I was the attorney on this case. I'm the attorney on the civil rights case. They're acting with intent. I mean, it's intent usually to try to protect a child from perceived abuse. They may have misperceived abuse. They may have been wrong. But you're giving the caseworkers far too much credit. They're directives here. They're acting with intent. The Qualified Immunity Doctrine requires we do that. Yes. Well, at this stage, it totally sucks. It shocks the conscience. Well, it shocks the conscience, but we're at a 12-day suspension. This child was removed for how many days? The child in this case was removed for ultimately four days. Four days. And you're saying that's a ‑‑ it's a tough fact to say that that's a violation of a clearly established constitutional right. Well, the state had no ‑‑ there was no basis, there was no objective basis to remove the child in this case. And I think it's ‑‑ But presume she didn't violate the order, right? I mean, the move was the triggering event, right? But for the move, we have a different case because then you've got them removing a child even though she complied with the order of subpoena. But this is an event that the caseworkers knew was going to happen. You're saying it's their fault that she had to move. And you may be right about that. You may be right about that. But she did move in violation of the order. But she was ‑‑ well, she was ejected. She was ejected from a shelter. I mean, she was not ‑‑ Well, she moved and didn't notify, isn't that right? No, she did notify. Not only did she notify, she notified several days, maybe a week ahead of time, that first of all, the division set up the shelter. She notified that her time at that place was coming to a close. And the division not only did they ‑‑ or they notified about it when it was set up, they knew about it at the beginning. And not only did she notify the division that she was moving, she also notified them and made the application for approval for the family that she ended up living with. So they have all the information when they did this removal, that the house was appropriate, it was determined to be appropriate. Instead, I had to go in front of the court to force them to do the review that they should have done a while, weeks before. But it wasn't intentional. So if they had done their job, none of this would have happened? If they had done their job, yes. And the issue is that they intentionally did not perform their jobs. And the issue is with respect to ‑‑ We've been going through it quite a bit as we deal with Mr. Walters. We understand your arguments. Well, one important issue I just want to address quickly on the hair follicle test. If you had to say shortly or quickly. I will do it very quickly. The test is still timed. We have them quickly. It always comes in. It's never quick. 30 seconds. It won't be 30 seconds. Go ahead. The standard here that was done on the hair follicle test was a limited detection test. So it wasn't 500 picograms per milligram, which would be a normal test. It was 100 picograms per milligram. And it came in at 100, which is a limited detection, which is not use. And it was actually 80% of that was within the margin of error. So we're talking about that there was no cocaine in my client's system, not even a situation that appears that the state is arguing, well, they were on the 500 picogram. That's also a misrepresentation of the facts. And that shows, in my opinion, the bad faith on behalf of the state. Thank you, Your Honors. Thank you. Do you want to use this sometime, I think, save some time? You sure you want to use it? Yes, I suppose. It always happens. It always happens. I just wanted to point out with respect to Croft and the facts that were at issue there was an anonymous complaint based on six-fold hearsay. So Croft, if anything, establishes that the anonymous source, the six-fold hearsay, does not arise to reasonable suspicion. Okay, fine. Do you concede that Ms. Romero advised her clients ahead of time of the move and told them of where she was going? So why do we have a violation of the order? Well, we'll accept the allegations in the complaint are that she had told them ahead of time that her time expired at the end of October. So assuming that they were on notice and assuming that they didn't. When did she move? October 28th. That's my understanding that she moved on October 28th, which was the date that they removed the child. Again, that in and of itself, it does not amount to anything more. At most, it amounts to negligence here. I mean, people didn't do their job. If they know that she's going to be forced out by the end of October, they need to work with her to give her alternative placement, don't they? I mean, can we really blame her for leaving three days before the month expired? That's a fairly sure fact. That's what anyone would do, right? But it's very hard to find from that. What we have here, though, is the decision to remove is certainly not punishment to Ms. Romero for moving out of the safe house. The decision to remove is the paramount concern is the safety of the child. So that's what the focus is on here. But that's what you would argue to the jury. You should argue something else to the jury. I mean, why isn't that an issue of fact? You should have not passed under Jimbo's invitation that you not use your rebuttal. Because it still only amounts to negligence. If they did not do their job, perhaps they were negligent with respect to Ms. Romero, but it does not impact that decision. It has to involve a conspiracy to deprive her of her job. But you would agree, would you not, that if this complaint said something like these four or five state actors were friends with Romero's estranged husband and he prevailed upon them to make Romero's life miserable and take her child away from her, you would concede, would you not, that that's a viable constitutional tort claim? I think at that point they've pled more than deliberate indifference, which was a standard in Zakat. It's intent to steal somebody's child, basically. Right. But that's not what we – those aren't the allegations here. There are hints of that here. I think here looking at leading up to the removal, I mean there are some allegations post-removal regarding the retaliation that was dismissed. There's also many of the allegations were dismissed with respect to what occurred when the verified complaint was filed because they're absolutely immune from that. And those facts, if they're absolutely immune from it, it certainly can't be used to overcome the qualified immunity. But here leading up to the removal, you have the notification and you have failure to make new arrangements, new living arrangements. And those allocations do not arise through more than deliberate indifference. Thank you. Thank you very much.